FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHELLY C.,[1] | No: 2:24-CV-00282-RLP |
| Plaintiff, | |
| v. | ORDER |
| LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

---

[1] The Court identifies a plaintiff in a social security case by only the first name and last initial in order to protect privacy. *See* LCivR 5.2(c).

[2] On February 18, 2025, Leland Dudek became the Acting Commissioner of Social Security. Pursuant to FRCP 25(d), Leland Dudek is substituted for Martin O'Malley as the defendant in this suit.

ORDER -- 1

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying Supplemental Security Income disability benefits. The Court considered the matter without oral argument.

The parties agree the ALJ committed reversible error by failing to analyze two opinions from psychological examiner Thomas Genthe, P.h.D. However, they dispute the applicable remedy. Ms. C. argues the failure to address Dr. Genthe's opinions, along with other errors, requires remand for a finding of disability and an immediate award of benefits. The Commissioner has not analyzed Ms. C.'s claims of error beyond the omission of Dr. Genthe's opinions. According to the Commissioner, this Court should remand for further proceedings.

Although the Commissioner's failure to address all the issues on appeal has complicated the Court's review, the Court ultimately concludes an ordinary remand is appropriate. Therefore, Ms. C's brief, ECF No. 11, is granted in part and denied in part and the Commissioner's brief, ECF No. 16, is granted.

## BACKGROUND

Ms. C. was born in 1973. She has a GED, and has been previously employed as a childcare worker, a janitor, a deli clerk, and a retail associate. Ms. C. has not worked since 2017, due to physical and mental health impairments.

Ms. C. filed for supplemental social security income on April 5, 2017, the date of alleged onset. Benefits were denied initially and upon reconsideration. Ms.

C. appeared at a hearing before Administrative Law Judge Eric S. Basse in 2018 and received an unfavorable decision. Ms. C. appealed to the district court and the Honorable Rosanna Malouf Peterson issued a written decision, remanding for additional proceedings.

In the 2022 remand hearing Ms. C. appeared before Administrative Law Judge Jesse K. Shumway and again received an unfavorable decision. Ms. C. filed another appeal and this time the parties stipulated to remand. The Honorable Lonny R. Suko issued a 2023 remand order and the Appeals Council also issued an order with detailed instructions for the ALJ.

Ms. C. appeared at a hearing before an Administrative Law Judge Cecilia LaCara in March 2024. On June 14, 2024, the ALJ LaCara issued a third unfavorable decision, finding Ms. C. did not meet or equal a Listing and had the residual functional capacity (RFC) for light work with other limitations. Ms. C. now appeals the 2024 decision.

## ANALYSIS

This Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). If the evidence in the record "is susceptible to more than one

ORDER -- 3

1  rational interpretation, [the Court] must uphold the ALJ's findings if they are

2  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

3  F.3d 1104, 1111 (9th Cir. 2012).

### FIVE-STEP EVALUATION PROCESS

5    A claimant must meet two criteria to be considered "disabled" within the

6  meaning of the Social Security Act. First, the claimant must be "unable to engage

7  in any substantial gainful activity by reason of any medically determinable

8  physical or mental impairment which can be expected to result in death or which

9  has lasted or can be expected to last for a continuous period of not less than twelve

10  months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

11  "of such severity that he is not only unable to do his previous work[,] but cannot,

12  considering his age, education, and work experience, engage in any other kind of

13  substantial gainful work which exists in the national economy." 42 U.S.C. §

14  1382c(a)(3)(B).

15    The Commissioner has established a five-step sequential analysis to

16  determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

17  416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial gainful

18  activity," the Commissioner must find the claimant is not disabled. 20 C.F.R. §

19  416.920(b). At step two, the Commissioner considers the severity of the claimant's

20  impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any

ORDER -- 4

1    impairment or combination of impairments which significantly limits [his or her]

2    physical or mental ability to do basic work activities," the analysis proceeds to step

3    three. 20 C.F.R. § 416.920(c). At step three, the Commissioner compares the

4    claimant's impairment to impairments listed by the Commissioner as so severe to

5    result in disability *per se*. 20 C.F.R. § 416.920(a)(4)(iii).

6        If the severity of the claimant's impairment does not meet or exceed the

7    severity of the listed impairments, the Commissioner must assess the claimant's

8    RFC. At step four, the Commissioner considers whether, in view of the claimant's

9    RFC, the claimant is capable of performing work that he or she has performed in

10   the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). At step five, the

11   Commissioner considers whether, in view of the claimant's RFC, the claimant is

12   capable of performing other work in the national economy.  20 C.F.R. §

13   416.920(a)(4)(v).

14       The claimant bears the burden of proof at steps one through four. *Tackett v.*

15   *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five,

16   the burden shifts to the Commissioner to establish (1) the claimant is capable of

17   performing other work; and (2) such work "exists in significant numbers in the

18   national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386,

19   389 (9th Cir. 2012).

20   *//*

ORDER -- 5

ALJ DECISION

At step one, the ALJ determined Ms. C. had not engaged in substantial gainful activity since April 5, 2017, the application date. At step two, the ALJ found Ms. C. suffers from the following severe impairments: lumbar and cervical degenerative disc disease, diabetes mellitus, migraine, hypertension, obesity, carpal tunnel syndrome, bilateral shoulder impingement, major depressive disorder, anxiety, post-traumatic stress disorder, and personality disorder. At step three, the ALJ found Ms. C's impairments do not meet the severity of those listed in 20 CFR Part 404, Subpart P, Appendix 1. At step four, the ALJ determined Ms. C. has no past relevant work.

With regard to RFC, the ALJ found:

> [Ms. C.] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with occasional stooping, kneeling, crouching, and crawling. She could occasionally reach overhead on the right, and frequently reach overhead on the left and lateral reaching, with in the weight limits specified. She can perform frequent bilateral handling and fingering. She should avoid concentrated exposure to nonweather related extreme cold, nonweather related extreme heat, humidity, industrial levels of noise, industrial levels of vibration, respiratory irritants, and hazards. Work is limited up to 2 step routine tasks and with occasional interaction with the public.

Tr. 3654-55.

The ALJ's determination at step five was based on the RFC finding. After considering the testimony of a vocational expert and Ms. C.'s age, education, work

experience, and RFC, the ALJ found there are jobs existing in the national economy the claimant can perform such as a marking clerk, a routing clerk, or a housekeeper. Based on the adverse finding as to step five, the ALJ determined Ms. C. has not been under a disability within the meaning of the Social Security Act at any time since the date of his application on April 5, 2017.

## ANALYSIS

The parties agree the ALJ's analysis was legally flawed because it did not assess the persuasiveness of all proffered medical opinions. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) ("the ALJ must assess the persuasiveness of each medical opinion after considering specified factors"). Specifically, the ALJ did not account for the 2019 and 2022 medical opinions of Dr. Thomas Genthe. This error alone requires remand. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). But Ms. C. alleges additional errors and she argues this combination of errors compels a decision in her favor. The Court disagrees that the record in this case is sufficiently conclusive to compel a decision in her favor by this Court. Nevertheless, the Court generally addresses Ms. C.'s claims of error as the issues raised by Mr. C. may arise again on remand.

*1. Listings*

Ms. C. claims the ALJ committed two types of errors in assessing the listings at step three of the analysis. First, she claims the ALJ did not consider the

ORDER -- 7

correct listings. Second, she claims the ALJ misapplied listings 11.02 and 1.15.

Each claim is addressed in turn.

Listings considered by the ALJ: The ALJ considered listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), 1.18 (Abnormality of a major joint in any extremity), 11.02 (Epilepsy), and 11.14 (Peripheral neuropathy). According to Ms. C., the ALJ should have assessed her cervical spine condition under Listing 1.04 instead of 1.15. The Court disagrees.

Listing 1.15 replaced Listing 1.04, effective April 2, 2021. Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164-01, 2020 WL 7056412 (Dec. 3, 2020). Regarding the retroactivity of the revised Listings, the SSA indicated:

> We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.

*Id.* at n.2. *See also Marian H. v. Dudek*, 2025 WL 546368 (S.D. Cal. Feb. 19, 2025).

This Court issued an order of remand in May of 2023, after the final rules became effective. As such, Listing 1.15 is applicable.

//

ORDER -- 8

Application of Listing 11.02: Listing 11.02 encompasses headaches occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. In its analysis, the ALJ recognized Mr. C. had alleged weekly headaches that caused nausea, vomiting, numbness, blurred vision, and light sensitivity. Nevertheless, the ALJ rejected Ms. C.'s testimony because her records reflected only "intermittent reports of headaches" and "she presented to treatment providers on several occasions without headaches." Tr. 3652.

The ALJ's analysis of Ms. C.'s headache complaints is nearly a word-for-word repetition of the analysis contained in the 2022 ALJ decision. *See* Tr. 3736. Yet when this matter was remanded in 2023, the Appeals Council rejected the ALJ's failure to credit Ms. C.'s complaints regarding headaches. *See* Tr. 3787. This Court's own review of the record supports the Appeals Council's assessment. While Ms. C. denied headaches consistently from October 22, 2017 through February 28, 2018, most of the other instances cited by the ALJ appear to have been isolated improvements, with Ms. C.'s headaches often occurring within the same week. *Compare* Tr. 778 (March 22, 2018) *with* Tr. 775 (March 28, 2018); Tr. 766 (April 14, 2018) *with* Tr. 771 (April 11, 2018); Tr. 751 (May 2, 2018) *with* Tr. 746 (same); Tr. 2821 (June 24, 2019) *with* Tr. 2814 (June 28, 2019); Tr. 2481 (Aug. 11, 2021) *with* Tr. 2474 (Aug 12, 2021); Tr. 4897 (Sept. 15, 2022) *with* Tr. 4453 (Sept. 19, 2022). The record further indicates headaches may have occurred

1  without interruption from November 2019 through January 2020.

2      Given the foregoing, the ALJ erred when it rejected Ms. C.'s claim of

3  weekly headaches. On remand, the fact that Ms. C. suffered from weekly

4  headaches should be deemed established as law of the case. With this fact in mind,

5  the ALJ shall assess whether Ms. C. meets the criteria for Listing 11.02.

6      <u>Application of Listing 1.15</u>: The portion of Listing 1.15 that is potentially

7  applicable to Ms. C.'s case is subpart D(3), which requires "[a]n inability to use

8  both upper extremities to the extent that neither can be used to independently

9  initiate, sustain, and complete work-related activities involving fine and gross

10 motor movements." The record indicates Ms. C. has a history of some impairments

11 due to carpal tunnel syndrome, but her symptoms improved following surgery.

12 According to the ALJ, the record contains no opinion from an acceptable medical

13 source concluding Ms. C. was "unable to use either of her upper extremities

14 involving fine and gross movements." Tr. 3735. Ms. C. claims this opinion

15 testimony can be drawn from her surgeon, Dr. Orton (Tr. 1781, 1788, 2837), and

16 from medical sources finding she was reduced to occasional handling. Tr. 3767,

17 3799.

18      This Court is unable to conclude that the ALJ was required to make a

19 disability finding under Listing 1.15. Instead, the ALJ shall address these claims on

20 remand.

ORDER -- 10

*2. RFC*

Ms. C. contends the ALJ's assessment of her RFC was flawed because the ALJ failed to appropriately analyze her testimony and medical opinion testimony.[3] The Court agrees in part.

Ms. C.'s testimony

A two-step process applies to an ALJ's assessment of a claimant's testimony regarding subjective pain and symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, if there is such evidence and there is no sign of malingering, the claimant's testimony should generally be accepted unless there is clear and convincing evidence in support of rejection. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). "[T]he ALJ

---

[3] Ms. C.'s briefing fails to clarify whether she believes the ALJ also failed to analyze opinion evidence with respect to mental impairment listings, 12.04, 12.06, 12.08, and 12.15. The law governing evidentiary analysis is the same, regardless of whether the issue is disability under a listing or a claimant's RFC. On remand, the Court's assessment of the ALJ's evidentiary analysis should be deemed applicable to all opinions, regardless of whether they are considered for purposes of the listings or RFC.

ORDER -- 11

1    can only reject the claimant's testimony about the severity of the symptoms if [the

2    ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v.*

3    *Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations

4    omitted). "General findings are insufficient; rather, the ALJ must identify what

5    testimony is not credible and what evidence undermines the claimant's

6    complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

7            The ALJ's assessment of Ms. C.'s complaints regarding pain failed to

8    comport with the foregoing legal standard. As discussed above, the ALJ did not

9    properly credit Ms. C.'s complaints regarding weekly headache pain. In addition,

10   the ALJ failed to appropriately credit Ms. C.'s complaints of chronic pain in her

11   spine. Ms. C.'s 2019 and 2021 x-rays and MRIs provide strong evidence of nerve

12   impingement at C5 and C7. For example, the July 2021 MRI found "likely" nerve

13   impingement at bilateral C5 and left C7 nerve root. Tr. 3169, 3186. The 2023

14   remand order from the Appeals Council similarly found the ALJ's assessment of

15   Ms. C.'s testimony incomplete for failing to account for "nerve root impairment."

16   Tr. 3786.

17           The ALJ also failed to explain why it placed so much weight on Ms. C.'s

18   ability to perform daily activities and child-care responsibilities. The Social

19   Security Act "does not require that claimants be utterly incapacitated to be eligible

20   for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). And "disability

ORDER -- 12

claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Here, the record indicates Ms. C. is able to drive short distances of eight miles or less and she is able to perform some child-care functions with the assistance of a partner. The ALJ's decision fails to explain how these modest daily activities contradict Ms. C.'s testimony regarding her disabling conditions.

On remand, the ALJ shall assess Ms. C.'s testimony regarding subjective pain and symptoms according to the governing legal standard as set forth in this opinion.

Medical opinion testimony

Under governing law, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). Special weight is not to be accorded to certain types of providers. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Instead, the ALJ is to evaluate all medical opinions on their own terms.

Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20

C.F.R. § 416.920c(b)(2). In evaluating supportability, the more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1)-(2). In evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. § 416.920c(b)(2); *see* 20 C.F.R. § 416.920c(c)(1)-(5).

"[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Court agrees with Ms. C. that the ALJ failed to properly analyze medical opinion testimony from several providers. Each is addressed in turn.[4]

---

[4] This order does not address all medical opinions critiqued by Ms. C. Rather, the Court only addresses those opinions for which there is obvious legal error. The omission of a particular medical opinion from this opinion does not mean the ALJ should not fully address all medical opinions on remand.

ORDER -- 14

Thomas Genthe, Ph.D.: As previously noted, the ALJ's decision failed to assess the medical opinions from Dr. Genthe issued in 2019 and 2022. In addition, while the ALJ did consider Dr. Genthe's opinion from 2020, this assessment was at least partially flawed.

In 2020, Dr. Genthe rated Ms. C. as markedly limited in six of 13 categories of basic work activity, with moderate limitations in five of the remaining seven categories. Dr. Genthe stated Ms. C.'s symptoms were "likely to interfere with her ability to initiate or maintain future employment," and opined she was "unlikely to function adequately" until her symptoms were managed more effectively. Tr. 2305.

The ALJ discredited Dr. Genthe's 2020 opinion because he "completed a checkbox form for another government agency and included no meaningful explanation of his ratings, and the regulations for DSHS in determining disability differ from those under the Social Security Act." Tr. 3670. The ALJ further noted Ms. C.'s responses on the Personality Assessment Inventory (PAI) indicated "some deliberate distortion" may be present, and her results were "unlikely to be an accurate reflection of [her] objective clinical status." Tr. 3671.

The ALJ's explanation for rejecting Dr. Genthe's 2020 opinion fail to meet the requirements of supportability and consistency. Federal regulations instruct the ALJ to consider evidence supporting state disability determinations. 20 C.F.R. § 416.904. The Washington State form used by Dr. Genthe is analogous the federal

ORDER -- 15

form, targeting the same work activities. The Washington form also contains a definition for its checkbox system. Dr. Genthe's assessment was made "based on behavioral observations made and information gained during the clinical interview". Tr. 2305. Clinical interviews constitute objective medical evidence. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

The PAI test referenced by the ALJ was performed in 2019, over a year before Dr. Genthe's 2020 exam. Dr. Genthe gave no indication he relied on the 2019 report, and the ALJ did not point to any evidence to the contrary.

On remand, the ALJ shall consider all of Dr. Genthe's medical opinions and evaluate them according to governing legal criteria, as set forth in this order.

Dan Neims, Psy.D.: In February 2017, Dr. Neims completed a DSHS evaluation and questionnaire for Ms. C., stating she presented as anxious and dysphoric with moderate lability. He rated her as moderately to markedly limited in making simple work-related decisions with no mild or moderate limitations in the remaining 12 categories of basic work activity.

The ALJ found Dr. Neims's assessment of marked limitations was inconsistent with the medical evidence. In at least partial support of this finding, the ALJ provided a general citation to exhibits that span hundreds of pages. In addition, the ALJ found Dr. Neims's opinion inconsistent with Ms. C.'s testimony that she is able to drive and take care of a child. The Court is unable to review the

ALJ's findings for supportability and consistency based on the broad citation to the record. Nor does the reference to Ms. C.'s minimal ability to drive short distances and take care of a child provide meaningful support for discrediting Dr. Neims's opinion.

The ALJ shall reevaluate Dr. Neims's opinion on remand.

<u>Bryan Larson, DNP</u>: In 2022, DNP Larson completed a questionnaire on Ms. C.'s mental capacity. He opined she would likely be off task 21 to 30 percent of the workday and miss four or more days of work per month. DNP Larson rated Ms. C. as markedly limited in working in coordination with or proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, and getting along with co-workers or peers without distracting them or exhibiting behavioral extremes.

The ALJ found DNP Larson's opinion only partially persuasive:

> I find Mr. Larson's opinion partially persuasive, namely his assessment of the claimant's "B" criteria, but he did not include any meaningful explanation of his checkbox responses and left the 'comments' section of the form blank. His opinions on the claimant's time off task and absences from work are consistent with the marked limitation he assessed for completing work without interruptions from psychological symptoms, but I do not find that his marked rating is supported by the evidence described above.

Tr. 3672.

ORDER -- 17

1    The ALJ discounted DNP Larson's opinion regarding marked conditions

2    because it included only checkbox responses and was unsupported by the evidence

3    "described above." It is unclear what evidence the ALJ was referring by the

4    reference to what was "described above." Further, while an ALJ is permitted to

5    give greater weight to opinions with greater explanatory support, an ALJ harmfully

6    errs in giving less weight to a checkbox report where the opinion is based on

7    significant experience and supported by numerous records. *Garrison*, 759 F.3d at

8    1013. Here, the record reflects DNP Larson had been treating Ms. C. for at least six

9    months and his notes regularly describe interpersonal issues with almost everyone

10    in Ms. C.'s life.

11    The ALJ is instructed to reconsider DNP Larson's 2022 report on remand.

12    <u>Anselm Parlatore, M.D.</u>: In 2017, Dr. Parlatore opined Ms. C. was markedly

13    impaired in social interaction and adaptation, activities of daily living and social

14    functioning, and her ability to tolerate increased mental demands associated with

15    competitive demands.

16    In an analysis that repeats nearly word-for-word the 2022 decision by a

17    different ALJ, the ALJ concluded Dr. Parlatore's opinion was not persuasive. One

18    of the reasons for rejecting Dr. Parlatore's opinion was that it was inconsistent with

19    Ms. C.'s course of treatment, wherein she "usually declined medication and only

20    underwent routine and conservative treatment." Tr. 3669. This analysis is

ORDER -- 18

1    inconsistent with the 2023 Appeals Council remand order which stated Ms. C.

2         [w]as active and engaged in therapy in late 2017 for five months
           (Exhibit C9F). Thereafter, the record shows she was treated for mental
3         health concerns by NP Avila-Parker from early 2018 to January 2020
           (e.g., Exhibit B10F, pp. 18, 51, 123; Exhibit C12F, pp. 63, 110;
4         Exhibit C13F, p. 24; Exhibit C19F, p. 83; Exhibit C22F, pp. 424-477),
           switched to Grant Integrated Services in early 2020 to mid-2021 (e.g.,
5         Exhibit C16F, pp.2, 13, 22, 38, 46, 61, 73, 81, 91, 109), and then was
           treated by DNP Larson (e.g., Exhibit C22F, p. 191).

6    Tr. 3787.

7    On remand, the ALJ shall consider Dr. Parlatore's opinion de novo, based on the

8    foregoing.

9         Helena Hauge, LMHC: In 2017, therapist Hauge found Ms. C. "had not

10   developed healthy coping mechanisms or cognitive thinking patterns that allow her

11   to regulate her moods or set boundaries." Tr. 679. She opined Ms. C. had a

12   difficult time interacting with others and it could be difficult for Ms. C. to be

13   consistent in her schedule due to anxiety and depression.

14        The ALJ found Ms. Hauge's opinion not persuasive in part because she "is

15   not an acceptable medical source, and she only treated the claimant for

16   approximately five months." Tr. 3670.

17        The ALJ's assessment of Ms. Hauge's opinion is inconsistent with federal

18   regulations, which require consideration of all medical opinions or prior medical

19   findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). While Ms.

20   Hague is not an "acceptable medical source" under 20 C.F.R. § 404.1527(f), a

ORDER -- 19

"medical opinion" need only come from a "medical source," not an "acceptable" medical source. 20 C.F.R. § 404.1513. Ms. Hague is a licensed mental health counselor, and thus a "medical source." 20 C.F.R. § 404.1527(d). As such, the ALJ was required to evaluate the persuasiveness of Ms. Hague's opinion.

The ALJ shall consider Ms. Hague's opinion on remand.

***

The ALJ's decision must be reversed based on the foregoing legal errors. However, because the record contains evidence that could support a denial of benefits, this is not an extraordinary case where the Court will direct an award of benefits. Rather, this matter must be remanded for additional proceedings.

CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes this matter must be remanded for further administrative proceedings.

Accordingly,

1.     Plaintiff Ms. C.'s Brief, **ECF No. 11**, is **GRANTED in part and DENIED in part.**

2.     Defendant Commissioner's Brief, **ECF No. 16**, is **GRANTED**.

3.     This case is **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

*//*

ORDER -- 20

4.      On remand, the Commissioner will develop the record as necessary; offer the claimant the opportunity for a hearing; consider all relevant issues; and issue a new decision.

5.      Upon proper presentation, this Court will consider Plaintiff's application for costs, expenses, and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(a), (d).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for the Plaintiff. Commissioner and the file shall be **CLOSED**.

**DATED** March 31, 2025.

REBECCA L. PENNELL
United States District Judge

ORDER -- 21